UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

IVAN ANTONYUK; COREY JOHNSON; ALFRED
TERRILLE; JOSEPH MANN; LESLIE LEMAN; and
LAWRENCE SLOANE,                                                                1:22-CV-0986
                                                                                                    (GTS/CFH)
                              Plaintiffs,

v.

STEVEN A. NIGRELLI, in his Official Capacity as Acting
Superintendent of the New York State Police; JUDGE
MATTHEW J. DORAN, in His Official Capacity as
Licensing-Official of Onondaga County; WILLIAM
FITZPATRICK, in His Official Capacity as the Onondaga
County District Attorney; EUGENE CONWAY, in his
Official Capacity as the Sheriff of Onondaga County;
JOSEPH CECILE, in his Official Capacity as the Chief of
Police of Syracuse; P. DAVID SOARES, in his Official
Capacity as the District Attorney of Albany County;
GREGORY OAKES, in his Official Capacity as the District
Attorney of Oswego County; DON HILTON, in his Official
Capacity as the Sheriff of Oswego County; and JOSEPH
STANZIONE, in his Official Capacity as the District
Attorney of Greene County,

                              Defendants.
_____

APPEARANCES:                                                    OF COUNSEL:

STAMBOULIEH LAW, PLLC                              STEPHEN D. STAMBOULIEH, ESQ.
  Counsel for Plaintiffs
P.O. Box 428
Olive Branch, MS 38654

WILLIAM J. OLSON, P.C.                                    ROBERT J. OLSON, ESQ.
  Co-Counsel for Plaintiffs
370 Maple Avenue W, Suite 4
Vienna, VA 22180

1

| | |
|---|---|
| HON. LETITIA A. JAMES<br>Attorney General for the State of New York<br>  Counsel for the State Defendants<br>The Capitol<br>Albany, NY 12224 | MICHAEL G. McCARTIN, ESQ.<br>JAMES M. THOMPSON, ESQ.<br>Assistants Attorney General<br>ALEXANDRIA TWINEM, ESQ.<br>Assistant Solicitor General |
| BARCLAY DAMON LLP<br>  Counsel for Oswego County Defendants<br>Barclay Damon Tower<br>125 East Jefferson Street<br>Syracuse, NY 13202 | EDWARD G. MELVIN, ESQ.<br>JOHN JOSEPH PELLIGRA, ESQ. |
| HON. SUSAN R. KATZOFF<br>Corporation Counsel for the City of Syracuse<br>  Counsel for City of Syracuse Defendants<br>233 East Washington Street<br>300 City Hall<br>Syracuse, NY 13202 | TODD M. LONG, ESQ.<br>DANIELLE R. SMITH, ESQ.<br>DARIENN BALIN, ESQ.<br>Assistants Corporation Counsel |
| ONONDAGA COUNTY DEPT. OF LAW<br>  Counsel for Onondaga County Defendants<br>John H. Mulroy Civic Center, 10th Floor<br>421 Montgomery Street<br>Syracuse, NY 13202 | JOHN E. HEISLER, JR.<br>Deputy County Attorney |
| HON. EDWARD I. KAPLAN<br>Greene County Attorney<br>  Counsel for Defendant Stanzione<br>411 Main Street, Suite 443<br>Catskill, NY 12414 | EDWARD I. HAPLAN, ESQ. |
| HON. EUGENIA K. CONDON<br>Albany County Attorney<br>  Counsel for Defendant Soares<br>112 State Street, Room 600<br>Albany, NY 12207 | JOSEPH A. COTICCHIO, ESQ.<br>Assistant County Attorney |

GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

Currently before the Court, in this civil rights action by the six above-captioned individuals ("Plaintiffs") against the nine above-captioned employees of the State of New York or one of its counties or cities ("Defendants"), are the following two motions: (1) the motion of

2

Defendants Don Hilton and Gregory Oakes ("the Oswego County Defendants") to dismiss Plaintiffs' claims against them based on a lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1); and (2) the motion of Defendants Steven A. Nigrelli and Matthew J. Doran ("the State Defendants")[1] to dismiss Plaintiffs' claims against them based on a lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). (Dkt. Nos. 46, 50.) For the reasons set forth below, these motions are granted in part and denied in part.

I.  **OSWEGO COUNTY DEFENDANTS**

Generally, in their motion, the Oswego County Defendants argue that Plaintiff Mann (the sole Plaintiff asserting claims against them) lacks standing to assert his claims against them, because he has failed to allege that he has suffered, or is at substantial risk of suffering, an injury in fact by virtue of a credible threat of prosecution by the Oswego County Defendants under the Concealed Carry Improvement Act ("CCIA"). (Dkt. No. 46, Attach. 2.) The Court rejects this argument with regard to Plaintiff Mann's claims challenging Paragraphs "2.(b)," "2.(c)," "2.(f)," "2.(n)," "2.(p)," and "2.(s)" of Section 4 of the CCIA, and Section 5 of the CCIA, for the reasons stated in Parts III.A.2.b., III.A.2.c., III.A.2.f., III.A.2.n., III.A.2.p., III.A.2.s., and III.A.3. of its Decision of November 7, 2022. (Dkt. No. 78, at 25-34, 47-50, 57-63, 68-80, 82, 85.) Otherwise, the Court accepts this argument for the reasons stated in Part III.A.2. of its Decision of November 7, 2022. (*Id*. at 24-80.)

To the reasons set forth in its Decision of November 7, 2022, the Court adds the following analysis. At the very least, circumstances render the threatened enforcement of the

---

[1] Originally, this motion was filed on behalf of New York State Governor Kathleen Hochul, New York State Police Superintendent Kevin P. Bruen, and Defendant Doran. (Dkt. No. 46.) However, on November 7, 2022, the Court dismissed Governor Hochul as a party to this action. (Dkt. No. 78, at 85-87, 182.) Furthermore, on October 28, 2022, the Court substituted Defendant Nigrelli for Kevin P. Bruen pursuant to Fed. R. Civ. P. 25(d). (Text Notice filed on 10/26/2022; Dkt. No. 74; Docket Sheet Entry on 10/28/2022.)

CCIA against Defendants sufficiently imminent. As the Court explained in its Part III.A.2. of its Decision of November 7, 2022, Plaintiff Mann has sworn a sufficiently concrete and imminent intent to violate Paragraphs "2.(b)," "2(c)," "2(f)," "2(n)," and "2(s)" of Section 4 of the CCIA. (Dkt. No. 78.) This intent is not likely to go unnoticed given (1) the brazen nature of Plaintiff Mann's defiance, (2) the fact that at least one of his congregants is a member of local law enforcement, and (3) the fact of the recent publicization of the CCIA (including its sensitive-location provision) in New York State by both Governor Kathleen Hochul and Defendant Nigrelli. Moreover, on July 20, 2022, the Sheriff of Oswego County (where Plaintiff Mann's church is located), Defendant Hilton, publicly announced, "Under the new law, taking a legally licensed firearm into any sensitive area – such as a . . . *church* . . . is a felony punishable by up to 1 1/3 to 4 years in prison." (Dkt. No. 1, Attach. 9, at ¶ 24 [Mann Decl.] [emphasis added].) Similarly, on August 31, 2022, Defendant Hilton publicly announced, "If you own a firearm please be aware of these new laws as they will effect [sic] all gun owners whether we agree with them or not." (*Id.*) Finally, as the District Attorney of Oswego County, Defendant Oakes has been charged with the specific duty to enforce the CCIA, which duty he is not likely to ignore, particularly in light of both the stated policy of Defendant Hilton and the stated policy of the New York State Police.

    Simply stated, when a citizen complaint is made to the Oswego County Sheriff's Department (and it will be, given the nature of local law enforcement in rural Oswego County), one of Sheriff Hilton's deputies will arrive on the scene and hand Plaintiff Mann a legal document (likely in exchange for his handgun), whether that document should come in the form of a summons, a desk appearance ticket or a mere contraband receipt form. Plaintiff Mann need not wait for that legal document in order to challenge this patently unconstitutional law.

II.   **STATE DEFENDANTS**

Turning to the motion of the State Defendants, generally, in their motion, the State Defendants argue that Plaintiffs lack standing to assert their claims against them, because they have failed to allege that they have suffered, or are at substantial risk of suffering, an injury in fact by virtue of a credible threat of enforcement of the CCIA by the State Defendants. (Dkt. No. 50, Attach. 1.) The Court rejects this argument with regard to Plaintiff Sloane's claims challenging Sections 1 and 5 of the CCIA, for the reasons stated in Parts III.A.1. III.A.3. of its Decision of November 7, 2022. (Dkt. No. 78, at 18-24 ,82, 85.) The Court rejects this argument with regard to Plaintiff Mann's claims challenging Paragraphs "2.(b)," "2.(c)," "2.(f)," "2.(n)," "2.(p)," and "2.(s)" of Section 4 of the CCIA, and Section 5 of the CCIA, for the reasons stated in Parts III.A.2.b., III.A.2.c., III.A.2.f., III.A.2.n., III.A.2.p., III.A.2.s., and III.A.3. of its Decision of November 7, 2022. (Dkt. No. 78, at 25-34, 47-50, 57-63, 68-80, 82, 85.) The Court rejects this argument with regard to Plaintiff Johnson's claims challenging Paragraphs "2.(d)" and "2.(o)" of Section 4 of the CCIA, and Section 5 of the CCIA, for the reasons stated in Parts III.A.2.d., III.A.2.o., and III.A.3. of its Decision of November 7, 2022. (*Id*. at 82, 85.) The Court rejects this argument with regard to Plaintiff Terrille's claims challenging Paragraphs "2.(d)," "2.(n)," "2.(o)," "2.(p)," and "2.(s)" of Section 4 of the CCIA, and Section 5 of the CCIA, for the reasons stated in Parts III.A.2.d., III.A.2.n., III.A.2.o., III.A.2.p., III.A.2.s., and III.A.3. of its Decision of November 7, 2022. (Dkt. No. 78, at 34-45, 57-80, 82-85.) The Court rejects this argument with regard to Plaintiff Leman's claims challenging Paragraph "2.(d)" of Section 4 of the CCIA, and Section 5 of the CCIA, for the reasons stated in Parts III.A.2.d. and III.A.3. of its Decision of November 7, 2022. (Dkt. No. 78, at 34-45, 82-85.) The Court rejects this argument with regard to Plaintiff Antonyuk's claims challenging Section 5 of the CCIA, for

the reasons stated in Part III.A.3. of its Decision of November 7, 2022. (Dkt. No. 78, at 34-45, 82-85.) Otherwise, the Court accepts this argument for the reasons stated in Part III.A.2. of its Decision of November 7, 2022. (*Id*. at 24-80.)

Again, to the reasons set forth in its Decision of November 7, 2022, the Court adds the following analysis. Defendant Nigrelli's threat of August 31, 2022, was not "directed to the public in general" (as the State Defendants argue) but was *expressly* directed to the specific group of current license holders that was intent on violating Section 4 of the CCIA (i.e., five of the six Plaintiffs in this action):

> We ensured that the *lawful, responsible gun owners* have the tools now to *remain compliant with the law*. For *those who choose to violate this law* . . . I don't have to spell it out more than this. We'll have zero tolerance. If you violate this law, *you will be arrested*. Simple as that. Because the New York State Troopers are standing ready to do our job to ensure . . . all laws are enforced.

(Dkt. No. 1, Attach. 9, at ¶ 22, n.5 [Mann Decl.] [emphasis added].) Based on Defendant Nigerelli's shift in focus from "lawful, responsible gun owners" (i..e., license holders) who choose "to remain compliant with the law" to "those who choose to violate this law," it is difficult to understand how the State Defendants could earnestly argue that Defendant Nigrelli meant to address *non*-license holders who might choose to grab a handgun and run into a sensitive or restricted location. Defendant Nigrelli was talking to five of the six Plaintiffs (and those license holders like them, who were considering violating the law).

As for the propriety of Onondaga County Court Judge Matthew J. Doran as a Defendant, Defendant Doran admits he is a "'licensing officer' for Onondaga County described in N.Y. Penal Law § 265.00(10) and, as such, is responsible for the receipt and investigation of carry license applications, along with the issuance or denial of carry licenses." (Dkt. No. 1, at ¶ 11 [Plfs.' Compl.]; Dkt. No. 35, at ¶ 11 [Doran Answer].) More importantly, Defendant Doran

admits he is "the proper party with respect to Plaintiffs' challenge to the CCIA's requirement and definition of 'good moral character,' along with its associated requirements of an in-person interview, disclosure of a list of friends and family, provision of four 'character references,' and provision of three years of social media history." (*Id*.) Indeed, the State Defendants concede that "redressability might be present with respect to [Defendant] Doran." (Dkt. No. 48, at 32-33.)  In any event, Plaintiff Sloane need not complete a license application for two independent reasons: (1) the evidence (including the State Defendants' concession) that Defendant Doran would inevitably deny that application due to Sloane's sworn refusal to complete several portions of it;[2] and (2) the evidence that Sloane has adduced of the year-plus wait time for even a (newly demanded) in-person interview, which similarly renders his application futile: law-abiding, responsible citizens need not incur such a lengthy wait time in order to exercise their inalienable Second Amendment right to public carry.  As the Supreme Court presciently noted less than five months ago, "[B]ecause any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, ***lengthy wait times*** in processing license applications . . . deny ordinary citizens their right to public carry." *NYSRPA v. Bruen*, 142 S. Ct. 2111, 2138, n.9 (2022) (emphasis added).

These last two facts clearly distinguish Plaintiff Sloane's claims from those asserted by Richard Cooper, Michael Rebmann and Edward Garrett in *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 116, 122 (2d Cir. 2020) (affirming dismissal of claims asserted by Plaintiffs Cooper, Rebmann and Garrett, because they had not yet applied for licenses and had

---

[2]   The Court notes that (again, contrary to the State Defendants' characterization of the admissible record evidence presented to the Court), Plaintiff Sloane does in fact have social-media accounts for the prior three years, none of which he intends to disclose to a licensing officer. (Dkt. No. 1, Attach. 4, at ¶¶ 6-9 [Sloane Decl.].)  Whether or not any of the accounts is anonymous is irrelevant because Section 1 of the CCIA is not limited to "*anonymous* social-media accounts."

not made a substantial showing that their application would have been futile), *abrogated on other grounds*, *NYSRPA v. Bruen*, 142 S. Ct. 2111 (2022).

**ACCORDINGLY**, it is

**ORDERED** that the Oswego County Defendants' motion to dismiss Plaintiffs' claims against them based on a lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) (Dkt. No. 46) is **DENIED** **in part** with regard to the claims challenging those Sections of the CCIA that are specified above in this Decision and Order, and **otherwise GRANTED**; and it is further

**ORDERED** that the State Defendants' motion to dismiss Plaintiffs' claims against them based on a lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) (Dkt. No. 50) is **DENIED in part** with regard to the claims challenging those Sections of the CCIA that are specified above in this Decision and Order, and **otherwise GRANTED**; and it is further

**ORDERED** that all claims against these four Defendants are **DISMISSED without prejudice** for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) **EXCEPT** for the following claims, which **SURVIVE** these Defendants' motions:

   (1) Plaintiff Sloane's claims challenging Sections 1 and 5 of the CCIA,

   (2) Plaintiff Mann's claims challenging Paragraphs "2.(b)," "2.(c)," "2.(f)," "2.(n)," "2.(p)," and "2.(s)" of Section 4 of the CCIA, and Section 5 of the CCIA;

   (3) Plaintiff Johnson's claims challenging Paragraphs "2.(d)" and "2.(o)" of Section 4 of the CCIA, and Section 5 of the CCIA;

   (4) Plaintiff Terrille's claims challenging Paragraphs "2.(d)," "2.(n)," "2.(o)," "2.(p)," and "2.(s)" of Section 4 of the CCIA, and Section 5 of the CCIA;

   (5) Plaintiff Leman's claims challenging Paragraph "2.(f)" of Section 4 of the CCIA, and Section 5 of the CCIA; and

      (6) Plaintiff Antonyuk's claims challenging Section 5 of the CCIA.

Dated: November 17, 2022
     Syracuse, New York

_Glenn T. Suddaby_
Glenn T. Suddaby
U.S. District Judge